# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>2020 Jeep Wrangler Unlimited, VIN 1C4HJXDG3LW171312 | )<br>)<br>)<br>)<br>)    Case No.   1:22MJ35-1 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER
## RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Middle_____ District of _____North Carolina_____ is subject to forfeiture to the United States of America under ___18___ U.S.C. § __981(a)(1)(A),(C)__ *(describe the property)*:

2020 Jeep Wrangler Unlimited, VIN 1C4HJXDG3LW171312

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

/s/ James E. Newsome, Senior Special Agent, USS
*Applicant's signature*

James E. Newsome, Senior Special Agent, USS
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable electronic means, on this 26th day of January, 2022, at 3:12 p.m.

Date: __1/26/2022  3:12pm__

_____
*Judge's signature*

City and state: __Durham, NC__

Hon. Joe L. Webster, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH AND SEIZURE WARRANTS

I, James E. Newsome, Senior Special Agent with the United States Secret Service ("USSS") state under the penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the following is true and correct:

1.     I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 3056. I have been employed as a Senior Special Agent with USSS since 1998. I am currently assigned to the Cyber Crimes Task Force in Greensboro, North Carolina, and as part of my duties, I investigate crimes against the United States Department of Homeland Security, the United States Treasury, and its departments and entities. My duties include the investigation of illegal activities, including but not limited to alleged violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1344 (bank fraud). As a Senior Special Agent, I have conducted or participated in investigations of numerous fraud schemes. I have also participated in the execution of search and seizure warrants in the capacity of affiant and participant.

2.     This Affidavit is made in support of applications for seizure warrants for the property described below and set forth in Attachment B:

Financial accounts:

a.     All securities, funds on deposit, and other items of value held in the name of Samuel Allen Mouzon in Truist Investment Services, Inc.

1

brokerage account number WA8-071813;

b.      All funds on deposit up to a total of $20,000 in Truist (formerly BB&T) account number 1340004063162 in the names of Samuel Allen Mouzon and Kimberly Sowers Mouzon;

c.      All funds on deposit up to a total of $61,489 in Truist (formerly BB&T) account number 4340001145487 in the names of Samuel Allen Mouzon and Kimberly Sowers Mouzon;

d.      Securities, funds on deposit, and other items of value, up to a total of $7,000, held at Davenport & Company LLC in IRA Account number DA1-018245 in the name of Kimberly S Mouzon; and

e.      All securities, funds on deposit, and other items of value held at Davenport & Company LLC in brokerage account number DA1-107899 in the name of S Allen Mouzon C/F [minor] Mouzon U/NC UTMA.

Personal property:

a.      2020 Jeep Wrangler Unlimited, VIN 1C4HJXDG3LW171312;

b.      2020 Jeep Wrangler, VIN 1C4HJXENXLW166427;

c.      2020 GMC Yukon XL Denali, VIN 1GKS2HKJ2LR148503;

d.      2021 Jeep Grand Cherokee, VIN 1C4RJFAG6MC839058;

e.      2017 Bombardier SeaDoo Spark, Hull ID: YDV62321J617;

f.      2017 Bombardier SeaDoo Spark, Hull ID: YDV62256J617;

g.      2017 Triton LTWCII trailer, VIN 4TCSM1120HHL40381;

h.      2006 Correct Craft Super Air Nautique, SN CTC69095H506, with motor;

i.      2006 Ramlin Trailer, VIN 4WAAKFS2961000165;

j.      2014 Sea Hunt Ultra 235SE, SN: SXSA0017A414, with motor;

2

k. 2014 WESCO Boat Trailer, VIN 1W7B12429E1001495;

l. 2021 Polaris Model G21GXD99AZ, VIN 3NSGXD998MH220337;

p. 2021 Evolution 6 Plus LSV, VIN 7MZL20827MC000413;

q. 2020 or 2021 Club Car golf cart, VIN 4C94124DXMA335408;

r. 2019 Qualified Utility Trailer, VIN 5W0FB1213KL001454.

3. This Affidavit is also made in support of an application for a search and seizure warrant for any and all of the above personal property, as set forth in Attachment B, which may be located at 1713 Waterford Pointe Road, Lexington, North Carolina, as described more fully in Attachment A.

4. This investigation concerns Samuel Allen Mouzon ("MOUZON") of Lexington, North Carolina. MOUZON, a Certified Public Accountant, was terminated in August 2021 from his position as Chief Financial Officer (CFO) of a company based in High Point, North Carolina (the "VICTIM COMPANY"). MOUZON was employed with VICTIM COMPANY for more than twenty years prior to his separation from employment. This investigation has revealed that during his employment, MOUZON engaged in several schemes to facilitate the unauthorized use of VICTIM COMPANY funds, including funds VICTIM COMPANY received from the Paycheck Protection Program ("PPP"),[1] for personal expenses, loan and credit card payments, transfers to third parties, and real estate and vehicle purchases.

5. Based on the investigation described below, there is probable cause to

---

[1] Described in more detail below, the Paycheck Protection Program was a response by the federal government to assist small businesses during the COVID-19 pandemic.

believe that the properties listed in paragraph 2 constitute or are derived from proceeds traceable to specified unlawful activity, specifically Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), and/or 641 (theft of government funds), or were involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 1957, and are therefore subject to seizure and forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and/or (C).

6.      The facts and information contained in this Affidavit are based on my personal knowledge, as well as information obtained from witness interviews, documents, law enforcement records, and interviews and reports from other sworn law enforcement officers.

7.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of warrants, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the requisite foundation for a probable cause finding to support the issuance of the requested warrants.

<div align="center">

**INVESTIGATION**

</div>

8.      On October 7, 2021, the USSS and the Small Business Administration, Office of Inspector General (SBA-OIG) received a complaint from the High Point Police Department regarding an embezzlement and wire fraud scheme involving an employee at VICTIM COMPANY. The complainant stated that a former employee, MOUZON, embezzled funds from VICTIM COMPANY for his own personal gain. The complainant provided evidence that MOUZON used a company fuel card to make numerous

4

unexplained fuel transactions. The complaint also alleged MOUZON used a VICTIM COMPANY bank account to funnel company funds to his personal bank account, as well as to make purchases for the benefit of himself and his family members.

9.      Continuing on October 7, 2021, VICTIM COMPANY officials confirmed that MOUZON was employed as Chief Financial Officer for over twenty years until his termination in August 2021.

10.     USSS and SBA-OIG also confirmed MOUZON had access to all VICTIM COMPANY bank accounts to allow him to execute his job duties as CFO. MOUZON only was given authority by VICTIM COMPANY to access its bank accounts for the purpose of executing his duties as CFO and had no authority to access such accounts for his own purposes or benefit.

11.     This investigation determined that VICTIM COMPANY maintains an Operating Account at Pinnacle Bank ending in 0400 ("Pinnacle x0400"). This account was originally opened at High Point Bank, which, through a serious of mergers and bank buyouts is now Pinnacle Bank. This account is the main operating account for the VICTIM COMPANY and all of its business operations. VICTIM COMPANY receipts are deposited to this account and expenses, including payroll, are paid from this account.

12.     This investigation determined that VICTIM COMPANY also maintained an account at BB&T (now known as Truist Bank) ending in 2777 ("BB&T x2777"). On information and belief, this account was established a number of years ago to facilitate wire transfers which could not be processed through High Point Bank at the time. The original authorized signers on this account were MOUZON and Individual-1 (founder of VICTIM

5

COMPANY). Individual-1 died on February 8, 2017, leaving his widow and family members in control of the company. MOUZON was the sole authorized signer on BB&T x2777 from Individual-1's death until August 2021.

13. Based on statements from the President of VICTIM COMPANY and its Controller, from Individual-1's death until shortly before MOUZON's separation from employment, MOUZON appears to be the only employee at VICTIM COMPANY who knew of the existence of BB&T x2777. All the checks written on BB&T x2777 during this period were handwritten and signed by MOUZON.

14. As described below, the evidence developed by this investigation confirms that MOUZON used a VICTIM COMPANY bank account – BB&T x2777 – to funnel company funds for his personal use and benefit, and that he did so without the knowledge or authorization of VICTIM COMPANY.

## MOVEMENT OF VICTIM COMPANY FUNDS TO BB&T x2777

15. In 2015 and 2016, BB&T x2777 was funded with small deposits from Pinnacle x0400. Specifically, $3,500 was deposited in 2015, and $5,000 was deposited in 2016.

16. In 2017, a total of $19,000 was deposited to BB&T x2777: three checks from Pinnacle x0400 in the amount of $5,000 each, and one Cashier's Check from State Employee's Credit Union in the amount of $4,000. As described later in this Affidavit, 2017 is also the year in which checks payable to MOUZON, or for his benefit, began to clear BB&T x2777.

17. Between January 1 and November 28, 2018, four checks from Pinnacle

6

x0400 in the total amount of $26,500 were deposited to BB&T x2777.

18.    Beginning in December 2018 and continuing into 2021, the size, frequency, and character of deposits to BB&T x2777 changed, and VICTIM COMPANY funds were transferred into the account by several other methods: (1) third-party checks payable to VICTIM COMPANY were deposited to BB&T x2777 rather than to the VICTIM COMPANY operating account at Pinnacle; (2) after VICTIM COMPANY received a PPP loan, checks totaling $725,000 were drawn on Pinnacle x0400 and deposited to BB&T x2777; and (3) funds were moved by wire transfer from Pinnacle x0400 to BB&T x2777.

| Dates | Source of deposits to BB&T x2777 | Total amount |
|---|---|---|
| 12/18 - 2/21 | Deposit of third party checks | $    1,369,340.12 |
| 5/20 - 11/20 | Post PPP checks from Pinnacle x0600 | $    725,000.00 |
| 1/21 - 2/21 | Wire transfers from Pinnacle x0600 | $    81,198.74 |
| | TOTAL | $    2,175,538.86 |

20.    Current officers and representatives of VICTIM COMPANY have told law enforcement that these deposits and wire transfers were made without VICTIM COMPANY's knowledge or consent.

*Deposit of Third-Party Checks Payable to VICTIM COMPANY*

21.    Between December 2018, and February 2021, there were 25 deposits to BB&T x2777 of checks from third parties payable to VICTIM COMPANY. Some of these

7

deposits included multiple checks. The total amount of these deposits was $1,369,340.12.

22.    VICTIM COMPANY President stated he did not authorize these deposits and knew of no reason why checks from third parties were deposited to BB&T x2777 rather than to Pinnacle x0400.

### Transfer of COVID Relief Loan Proceeds

23.    In addition to third party checks, MOUZON caused four checks totaling $725,000 to be drawn on Pinnacle x0400 and deposited to BB&T x2777 after VICTIM COMPANY applied for and received a $2.2 Million Paycheck Protection Program loan, as described below.

24.    On March 29, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted into federal law. The CARES Act was designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of funding under the CARES Act available to small businesses was the Paycheck Protection Program ("PPP"). To be eligible for a PPP loan, it was necessary for a business to be in existence before February 15, 2020, have employees, and have monthly payroll costs. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan applicant was also required to provide documentation showing the payroll expenses of the business. The PPP loan applicant was required to assert, through its authorized representative, the average monthly payroll expenses of the small business, along with its number of employees. Further, the PPP loan application required the business, through its authorized representative, to acknowledge

8

the program rules and make certain affirmative representations and certifications. The loan application required representations including a certification that the information submitted was true and accurate and that the funds would only be used for business-related purposes.

25. Section 1102 of the CARES Act permitted the SBA to guarantee 100 percent of loans under the PPP pursuant to Section 7(a)(36) of the Small Business Act. See 15 U.S.C. § 636(a)(36)). Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

26. On April 13, 2020, VICTIM COMPANY applied and was approved for a PPP loan in the amount of $2,277,600 (Loan #44574671-10). This loan was processed through Pinnacle Bank, an approved SBA lender for the PPP. Pinnacle Bank made a direct deposit into Pinnacle x0400 in the full amount of $2,277,600.

27. On May 14, 2020, MOUZON authorized a check (#207805) from VICTIM COMPANY'S Pinnacle account x0400 to VICTIM COMPANY in the amount of $200,000. On the same date, check #207805 was deposited into VICTIM COMPANY's BB&T account x2777.

28. On June 12, 2020, MOUZON authorized a check (#208224) from Pinnacle x0400 to VICTIM COMPANY in the amount of $200,000. On the same date, check #208224 was deposited into BB&T x2777.

29. On October 2, 2020, MOUZON authorized a check (#210163) from Pinnacle x0400 to VICTIM COMPANY in the amount of $200,000. On the same date, check #210163 was deposited into BB&T x2777.

30. On November 9, 2020, MOUZON authorized a check (#210879) from

9

Pinnacle x0400 to VICTIM COMPANY in the amount of $125,000. On November 10, 2020, check #210879 was deposited into BB&T x2777.

31.     On June 9, 2021, the SBA forgave VICTIM COMPANY's PPP Loan and transferred $2,303,620.80 (principal plus bank fees) to Pinnacle Bank to payoff loan #44574671-10.

*Wire Transfers*

32.     On January 11, 2021, $5,000 was sent by wire transfer from Pinnacle x0400 to BB&T x2777.

33.     On February 10, 2021, $76,198.74 was sent by wire transfer from Pinnacle x0400 to BB&T x2777. .

34.     The wire documents do not identify the individual authorizing the transfers; however, in light of the facts discovered in this investigation and set forth in this Affidavit, there is probable cause to believe MOUZON initiated these wires or caused the same.

## TRANSFER AND USE OF VICTIM COMPANY FUNDS

35.     The investigation to date has revealed that MOUZON wrote some checks from BB&T x2777 that appear to be for legitimate business purposes. However, the majority of funds deposited to BB&T x2777 between August 2017 and February 2021 were transferred to MOUZON's personal accounts or paid to creditors for his benefit. The evidence shows at least four patterns of check writing for MOUZON's personal benefit, summarized as follows:

10

| Duration | Checks paid or deposited to | Total Amount |
|---|---|---|
| | | |
| 8/17 - 10/19 | MOUZON checking (BB&T x3162) | $ 130,781.44 |
| 4/19 - 2/21 | MOUZON credit cards | $ 301,854.41 |
| 9/19 - 3/20 | Installment lenders | $ 194,042.69 |
| 12/19 - 2/21 | MOUZON Line of credit (BB&T x6001) | $ 1,411,606.12 |
| | | |
| | TOTAL | $ 2,038,284.66 |
| | | |

A detailed discussion of each of these check-writing schemes follows.

*VICTIM COMPANY Funds Deposited to MOUZON's Personal Checking Account*

36.     Records provided by BB&T show MOUZON and his wife, Kimberly Sowers Mouzon, have an "Elite Gold Money Market" checking account ending in x3162 ("BB&T x3162"). BB&T records indicate the statements are mailed to MOUZON and Kimberly Sowers Mouzon at 1713 Waterford Pointe Road, Lexington, North Carolina. Prior to August 2020, statements for this account were mailed to MOUZON and Kimberly Sowers Mouzon at 168 Old Farm Road, Thomasville, North Carolina.

37.     Between August 24, 2017, and October 21, 2019, MOUZON used a total of $130,781.44 of VICTIM COMPANY funds for his personal benefit and without authorization by writing checks to himself on BB&T x2777 and depositing them to his personal checking account at BB&T. The memo line of these checks often had entries such as "Car repairs" or Expense reimbursement," but review of MOUZON's deposit account and credit card statements revealed very few, if any, expenses that might correlate to the alleged business expenses. Moreover, VICTIM COMPANY could not locate expense reports to support these purported reimbursements.

11

38.    Checks from BB&T x2777 payable to "Allen Mouzon"[2] and deposited to

MOUZON's personal checking account (BB&T x3162) are listed in Table 1, as follows:

| TABLE 1 | | | | | |
|---|---|---|---|---|---|
| Date | From Acct | Payee Name | Amount | Check # | Memo Line |
| 8/24/2017 | BB&T 2777 | Allen Mouzon | $ 1,739.16 | 1146 | Hutchens Auto Repair |
| 8/30/2017 | BB&T 2777 | Allen Mouzon | $ 1,596.01 | 1147 | Car Repairs |
| 9/25/2017 | BB&T 2777 | Allen Mouzon | $ 150.00 | 1148 | 2013 Ford detailing |
| 10/6/2017 | BB&T 2777 | Allen Mouzon | $ 4,271.32 | 1149 | Tahoe Repairs |
| 11/1/2017 | BB&T 2777 | Allen Mouzon | $ 4,000.00 | 1150 | Vehicle Purchase |
| 2/2/2018 | BB&T 2777 | Allen Mouzon | $ 1,498.60 | 1157 | Hutchens Auto Truck Repairs Reimbursement |
| 4/11/2018 | BB&T 2777 | Allen Mouzon | $ 2,543.18 | 1160 | Reimburse Vehicle Repairs |
| 5/18/2018 | BB&T 2777 | Allen Mouzon | $ 1,378.43 | 1161 | Vehicle Repairs |
| 6/25/2018 | BB&T 2777 | Allen Mouzon | $ 2,641.18 | 1162 | Expense Reimbursement |
| 7/7/2018 | BB&T 2777 | Allen Mouzon | $ 2,618.96 | 1163 | Vehicle Repairs |
| 10/22/2018 | BB&T 2777 | Allen Mouzon | $ 4,569.04 | 1169 | Expense Report Reimbursement |
| 11/19/2018 | BB&T 2777 | Allen Mouzon | $ 7,169.48 | 1172 | Vehicle purchase |
| 12/11/2018 | BB&T 2777 | Allen Mouzon | $ 4,888.26 | 1173 | 2018 Dodge Charger |
| 1/14/2019 | BB&T 2777 | Allen Mouzon | $ 2,689.18 | 1179 | Expense Reimbursement |
| 2/14/2019 | BB&T 2777 | Allen Mouzon | $ 2,648.32 | 1178 | Expense reimb - Tr...? |
| 3/22/2019 | BB&T 2777 | Allen Mouzon | $ 3,500.00 | 1181 | Florida trip expense |
| 4/5/2019 | BB&T 2777 | Allen Mouzon | $ 4,685.12 | 1183 | [illeg] repair on van |
| 6/27/2019 | BB&T 2777 | Allen Mouzon | $ 12,896.18 | 1191 | 2016 Dodge Charger |
| 9/30/2019 | BB&T 2777 | Allen Mouzon | $ 36,482.61 | 1208 | 2019 Dodge Truck |
| 10/21/2019 | BB&T 2777 | Allen Mouzon | $ 28,816.41 | 1212 | 2019 Dodge Truck-Jay S....(illeg) |
| | TOTAL | | $ 130,781.44 | | |

39.    All the checks identified in Table 1 are hand-written and signed by

MOUZON.

### Use of VICTIM COMPANY Funds to Pay Personal Charge Cards

40.    Records provided by BB&T show MOUZON and his wife, Kimberly Sowers

Mouzon, have a "Visa Signature" credit card account ending in x4636 ("BB&T x4636").

BB&T records indicate the statements are mailed to MOUZON and Kimberly Sowers

---

[2] MOUZON is known by his middle name, "Allen."

Mouzon at 1713 Waterford Pointe Road, Lexington, North Carolina. Prior to August 2020, statements for this account were mailed to 168 Old Farm Road, Thomasville, North Carolina.

41.     Between April 2019 and February 2021, MOUZON used VICTIM COMPANY funds in the total amount of $301,854.41 for his personal benefit and without authorization by writing checks on BB&T x2777 and using them to pay personal credit card bills, including BB&T x4636 and a Home Depot credit card. The memo line of these checks often had entries such as "Expense reimbursement" but review of MOUZON's BB&T charge card statements reveals few, if any, expenses that might be reimbursable business expenses. And significantly, throughout this period VICTIM COMPANY checks drawn on BB&T x2777 regularly paid the *entire* balance on BB&T x4636 each month, not just a portion of the balance. Moreover, use of a personal credit card to pay business expenses was contrary to corporate policy of VICTIM COMPANY.

42.     Checks from BB&T x2777 used to pay MOUZON's personal credit card accounts are summarized in Table 2, as follows:

## TABLE 2

| Date | From ACCT | Payee name | Amount | Memo line | Check NO |
|------|-----------|------------|--------|-----------|----------|
| 4/29/2019 | BB&T x2777 | BB&T | $ 10,217.37 | Credit Card | 1184 |
| 6/10/2019 | BB&T x2777 | BB&T | $ 2,586.41 | Expenses | 1187 |
| 6/24/2019 | BB&T x2777 | BB&T | $ 5,548.66 | Expense reimbursement | 1189 |
| 7/11/2019 | BB&T x2777 | BB&T | $ 6,489.43 | Expense reimbursement | 1193 |
| 7/31/2019 | BB&T x2777 | BB&T | $ 6,551.04 | Expenses on CC | 1195 |
| 8/19/2019 | BB&T x2777 | BB&T | $ 9,560.95 | CC 4636 | 1196 |
| 9/4/2019 | BB&T x2777 | BB&T | $ 6,468.36 | Credit Card | 1197 |
| 9/11/2019 | BB&T x2777 | BB&T | $ 5,217.55 | CC expenses | 1199 |
| 9/23/2019 | BB&T x2777 | BB&T | $ 4,817.55 | Expense report thru 9/23/19 | 1203 |
| 10/16/2019 | BB&T x2777 | BB&T | $ 8,706.01 | Company use of CC | 1210 |
| 11/6/2019 | BB&T x2777 | BB&T | $ 7,361.16 | CC payment | 1217 |
| 12/10/2019 | BB&T x2777 | BB&T | $ 9,672.04 | CC payment | 1220 |
| 1/2/2020 | BB&T x2777 | BB&T | $ 7,232.16 | CC | 1228 |
| 1/23/2020 | BB&T x2777 | BB&T | $ 7,791.84 | Credit Card | 1236 |
| 2/7/2020 | BB&T x2777 | BB&T | $ 6,114.29 | Expenses | 1243 |
| 2/21/2020 | BB&T x2777 | BB&T | $ 7,554.45 | | 1253 |
| 3/9/2020 | BB&T x2777 | BB&T | $ 7,930.60 | | 1269 |
| 3/20/2020 | BB&T x2777 | BB&T | $ 8,942.48 | | 1273 |
| 4/6/2020 | BB&T x2777 | BB&T | $ 9,926.85 | CC | 1275 |
| 4/21/2020 | BB&T x2777 | BB&T | $ 5,693.53 | | 1280 |
| 5/14/2020 | BB&T x2777 | BB&T | $ 5,938.01 | Expense Reimbursement | 1283 |
| 6/3/2020 | BB&T x2777 | BB&T | $ 6,567.72 | CC Payment | 1288 |
| 6/26/2020 | BB&T x2777 | BB&T | $ 5,664.97 | CC Reimbursement | 1290 |
| 7/10/2020 | BB&T x2777 | BB&T | $ 11,418.47 | CC Reimbursement | 1293 |
| 7/23/2020 | BB&T x2777 | BB&T | $ 11,179.22 | Expense Reimbursement | 1296 |
| 7/28/2020 | BB&T x2777 | BB&T | $ 4,429.12 | Expense Reimbursement | 1297 |
| 8/10/2020 | BB&T x2777 | BB&T | $ 4,054.78 | CC Reimbursement | 1299 |
| 8/24/2020 | BB&T x2777 | BB&T | $ 9,499.40 | CC Payment | 1301 |
| 9/14/2020 | BB&T x2777 | BB&T | $ 6,379.57 | CC Reimbursement | 1306 |
| 9/29/2020 | BB&T x2777 | BB&T | $ 2,832.97 | CC Reimbursement | 1312 |
| 9/25/2020 | BB&T x2777 | BB&T | $ 8,740.52 | CC Reimbursement | 1309 |
| 10/12/2020 | BB&T x2777 | BB&T | $ 7,587.94 | CC Payment | 1315 |
| 10/20/2020 | BB&T x2777 | BB&T | $ 3,700.24 | CC Reimbursement | 1319 |
| 11/19/2020 | BB&T x2777 | BB&T | $ 6,861.18 | CC Reimbursement | 1324 |
| 11/20/2020 | BB&T x2777 | BB&T | $ 10,381.96 | Expense Reimbursement | 1327 |
| 12/11/2020 | BB&T x2777 | BB&T | $ 9,175.44 | CC Reimbursement | 1330 |
| 12/15/2020 | BB&T x2777 | BB&T | $ 8,378.64 | CC Reimbursement | 1333 |
| 1/14/2021 | BB&T x2777 | BB&T | $ 10,251.95 | Expense Reimbursement | 1339 |
| 2/1/2021 | BB&T x2777 | BB&T | $ 10,574.91 | CC Reimbursement | 1340 |
| | Subtotal | | $ 287,999.74 | | |
| 6/10/2019 | BB&T x2777 | Home Depot Card Svcs | $ 6,755.12 | Expenses | 1188 |
| 10/29/2019 | BB&T x2777 | Home Depot Card Svcs | $ 4,913.09 | 6035 3208 8982 5137 | 1213 |
| 6/26/2020 | BB&T x2777 | Home Depot Card Svcs | $ 2,186.46 | CC Reimbursement | 1291 |
| | Subtotal | | $ 13,854.67 | | |
| | **TOTAL CC PMTS** | | **$ 301,854.41** | | |

14

43. All the checks identified in Table 2 are hand-written and signed by MOUZON.

*Use of VICTIM COMPANY Funds to Pay Installment Obligations*

44. Between September 24, 2019, and March 9, 2020, MOUZON used a total of $194,042.69 in VICTIM COMPANY funds for his personal benefit and without authorization by writing checks from BB&T x2777 to pay off installment loans to various creditors.

45. Checks from BB&T x2777 used to pay off installment debts are listed in Table 3, as follows:

| | | | TABLE 3 | | | |
|---|---|---|---|---|---|---|
| Date | From Acct | Paid to | Amount | | Check # | Memo Line |
| 9/24/2019 | BB&T x2777 | Sheffield Financial | $ | 13,943.01 | 1204 | 12069916 |
| 9/24/2019 | BB&T x2777 | GM Financial | $ | 16,018.57 | 1205 | #111008668944 |
| 10/7/2019 | BB&T x2777 | Sharonview FCU | $ | 17,152.74 | 1209 | Payoff |
| 11/5/2019 | BB&T x2777 | BB&T | $ | 41,478.59 | 1216 | Payoff #2022806257-1001 |
| 11/12/2019 | BB&T x2777 | Southeast Toyota Finance | $ | 22,684.49 | 1218 | Acct #001010000004082354 |
| 12/12/2019 | BB&T x2777 | Wells Fargo Auto | $ | 16,501.86 | 1221 | #9720369758 |
| 1/4/2020 | BB&T x2777 | Wells Fargo Auto | $ | 21,831.89 | 1233 | 9720369758 |
| 2/11/2020 | BB&T x2777 | Wells Fargo Auto | $ | 23,667.01 | 1244 | 9720369758 |
| 3/9/2020 | BB&T x2777 | Wells Fargo Auto | $ | 20,764.53 | 1270 | 9720369758 |
| | | | | | | |
| | | TOTAL | $ | 194,042.69 | | |

46. All the payments identified in Table 3 were made with checks from BB&T x2777 that were hand-written and signed by MOUZON.

47. The loans represented in Table 3 trace to items of personal property described later in this Affidavit. The transactions giving rise to the obligations are described in greater detail in the discussion of the property to which they relate.

*VICTIM COMPANY Funds Applied to MOUZON Line of Credit*

48. Records provided by BB&T show MOUZON and his wife, Kimberly Sowers Mouzon, have an Equity Line of Credit from BB&T, Loan #2011979826-6001, in the amount of $125,000, dated October 3, 2006 ("BB&T x6001"). BB&T records indicate the statements are mailed to MOUZON and Kimberly Sowers Mouzon at 1713 Waterford Pointe Road, Lexington, North Carolina. Prior to August 2020, statements for this account were mailed to 168 Old Farm Road, Thomasville, North Carolina.

49. BB&T x6001 is secured by a Deed of Trust recorded against property known as 1 Fern Court, Ocean Isle Beach, Brunswick County, North Carolina, which MOUZON and his wife purchased in 2003.

50. As of November 9, 2019, BB&T x6001 had a balance due of $121,579.05. The balance (including additional accrued interest to the date of payment) was paid off with two checks from BB&T x2777, as follows:

| Date | From Acct | Payee Name | To Account | Amount | Check # | Memo Line |
|------|-----------|------------|------------|--------|---------|-----------|
| 12/2/2019 | BB&T 2777 | BB&T | BB&T 6001 | $ 50,000.00 | 1219 | Repayment of loan |
| 12/20/2019 | BB&T 2777 | BB&T | BB&T 6001 | $ 72,618.08 | 1225 | Loan Payback |

51. Beginning on January 1, 2020, MOUZON began taking a series of large advances on BB&T x6001 which were promptly repaid with VICTIM COMPANY funds via checks from BB&T x2777.

52. Between December 2, 2019, and February 17, 2021, MOUZON used $1,411,606.12 of VICTIM COMPANY funds for his personal benefit and without authorization by making payments to BB&T x6001 with checks drawn on BB&T x2777.

16

The memo line of these checks often had entries such as "Repayment of Loan" but there is no evidence that MOUZON loaned any funds to VICTIM COMPANY.

53. Checks from BB&T x2777 deposited to BB&T x6001 (including the two December 2019 checks mentioned above), are listed in Table 4, as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **TABLE 4** | | | | | | | |
| **Date** | **From Acct** | **Payee Name** | **To Account** | **Amount** | | **Check #** | **Memo Line** |
| 12/2/2019 | BB&T 2777 | BB&T | BB&T 6001 | $ | 50,000.00 | 1219 | Repayment of loan |
| 12/20/2019 | BB&T 2777 | BB&T | BB&T 6001 | $ | 72,618.08 | 1225 | Loan Payback |
| 1/4/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 42,027.25 | 1230 | #201197826-6001 |
| 1/29/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 90,016.88 | 1238 | LOC |
| 3/2/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 44,688.18 | 1262 | #201197826-6001 |
| 3/20/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 56,171.30 | 1274 | |
| 4/9/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 37,673.18 | 1276 | Loan Payment |
| 4/21/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 69,214.81 | 1279 | |
| 4/22/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 32,435.18 | 1281 | |
| 5/15/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 125,000.00 | 1284 | Credit Line Reimbursement |
| 5/26/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 100,000.00 | 1286 | Payback Advance |
| 5/29/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 25,000.00 | 1287 | Repayment on Line Advance |
| 6/16/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 125,037.74 | 1289 | Repay loan |
| 7/10/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 50,062.16 | 1294 | Pay back line advance |
| 8/26/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 75,000.00 | 1302 | LOC Payment |
| 9/29/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 15,000.00 | 1311 | Payback on Line |
| 10/8/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 125,000.00 | 1313 | Repay LOC |
| 11/2/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 65,053.28 | 1322 | LOC Repayment |
| 11/18/2020 | BB&T 2777 | BB&T | BB&T 6001 | $ | 100,079.92 | 1326 | Repay LOC |
| 1/14/2021 | BB&T 2777 | BB&T | BB&T 6001 | $ | 50,013.35 | 1338 | LOC |
| 2/17/2021 | BB&T 2777 | BB&T | BB&T 6001 | $ | 61,514.81 | 1342 | Pay back advance |
| | | | | | | | |
| | | TOTAL | | $ | 1,411,606.12 | | |
| | | | | | | | |

54. All the checks identified in Table 4 are hand-written and signed by MOUZON.

## MOUZON'S DEPOSIT ACCOUNTS AND INTERACCOUNT TRANSFERS

### *Personal Deposit Accounts Controlled by MOUZON*

55. In addition to the BB&T checking account previously identified in this

17

Affidavit (BB&T x3162), MOUZON and his wife maintained a "BB&T Esavings Account" ending in x5487 ("BB&T x5487") at all times relevant to this investigation. A second BB&T "Esavings Account" ending in 4367 ("BB&T x4367") was opened between September 2018 and July 2020, but the balance was thereafter transferred to BB&T x5487.

56.     In December 2020, MOUZON and his wife opened another joint checking account. Statements for the account through September 9, 2021, reflect little activity and the ending balance has never exceeded $1,000.

57.     MOUZON was also a co-owner of Daughter-2's[3] student checking and savings accounts at BB&T (discussed later in this Affidavit in relation to a vehicle purchased in Daughter-2's name). While he transferred small sums to, and occasionally from, these accounts, they appear to have been used primarily by Daughter-2.

*Interaccount Transfers*

58.     As described above, MOUZON deposited a total of $1,411,606.12 in checks from VICTIM COMPANY BB&T x2777 to his BB&T Line of Credit account ending in 6001. The first two payments covered the outstanding balance of the line. Thereafter these checks followed large advances on the credit line that went into BB&T x5487 or BB&T x3162.

59.     The timing and pattern of line of credit advances and transfers to BB&T x5487 and BB&T x3162 is illustrated in the following table:

---

[3] Upon information and belief, Daughter-2 is MOUZON's child.

18

| | Paid on LOC from BB&T x2777 | | | Deposit of advances from BB&T x6001 (LOC) | |
|---|---|---|---|---|---|
| Date | Principal | Interest | Total | To BB&T x3162 | To BB&T x5487 |
| 12/2/2019 | $49,500.16 | $499.84 | $50,000.00 | | |
| 12/20/2019 | $72,078.89 | $539.19 | $72,618.08 | | |
| 1/2/2020 | | | | $42,000.00 | |
| 1/4/2020 | $42,000.00 | $27.25 | $42,027.25 | | |
| 1/27/2020 | | | | $65,000.00 | |
| 1/29/2020 | | | | $25,000.00 | |
| 1/29/2020 | $90,000.00 | $16.88 | $90,016.88 | | |
| 2/26/2020 | | | | | $44,665.00 |
| 3/2/2020 | $44,665.00 | $23.18 | $44,688.18 | | |
| 3/20/2020 | | | | | $56,171.30 |
| 3/20/2020 | $56,171.30 | | $56,171.30 | | |
| 4/6/2020 | | | | $27,673.18 | |
| 4/9/2020 | | | | | $10,000.00 |
| 4/9/2020 | $37,662.40 | $10.78 | $37,673.18 | | |
| 4/16/2020 | | | | | $46,546.15 |
| 4/17/2020 | | | | | $22,639.95 |
| 4/21/2020 | $69,186.10 | $28.71 | $69,214.81 | | |
| 4/22/2020 | | | | | $32,435.18 |
| 4/22/2020 | $32,435.18 | | $32,435.18 | | |
| 5/14/2020 | | | | | $100,000.00 |
| 5/15/2020 | | | | | $25,000.00 |
| 5/15/2020 | $125,000.00 | | $125,000.00 | | |
| 5/26/2020 | | | | | $100,000.00 |
| 5/26/2020 | $100,000.00 | | $100,000.00 | | |
| 5/27/2020 | | | | | $25,000.00 |
| 5/29/2020 | $24,962.27 | $37.73 | $25,000.00 | | |
| 6/12/2020 | | | | | $100,000.00 |
| 6/15/2020 | | | | | $25,000.00 |
| 6/16/2020 | $125,000.00 | $37.74 | $125,037.74 | | |
| 6/26/2020 | | | | | $50,000.00 |
| 7/10/2020 | $50,000.00 | $62.16 | $50,062.16 | | |
| 8/25/2020 | | | | | $75,000.00 |
| 8/26/2020 | $75,000.00 | | $75,000.00 | | |
| 9/28/2020 | | | | | $15,000.00 |
| 9/29/2020 | $15,000.00 | | $15,000.00 | | |
| 10/7/2020 | | | | | $100,000.00 |
| 10/8/2020 | | | | | $25,000.00 |
| 10/8/2020 | $125,000.00 | | $125,000.00 | | |
| 10/20/2020 | | | | | $50,000.00 |
| 11/2/2020 | | | | | $15,000.00 |
| 11/2/2020 | $65,000.00 | $53.28 | $65,053.28 | | |
| 11/3/2020 | | | | | $100,000.00 |
| 11/18/2020 | $100,000.00 | $79.92 | $100,079.92 | | |
| 1/11/2021 | | | | | $50,000.00 |
| 1/14/2021 | $50,000.00 | $13.35 | $50,013.35 | | |
| 2/12/2021 | | | | | $50,000.00 |
| 2/12/2021 | | | | | $7,977.13 |
| 2/17/2021 | | | | | $3,511.87 |
| 2/17/2021 | $61,489.00 | $25.81 | $61,514.81 | | |
| | | | | | |
| Totals | $1,410,150.30 | $1,455.82 | $1,411,606.12 | $159,673.18 | $1,128,946.58 |

60.    MOUZON made frequent online transfers between and among his savings

19

accounts (BB&T x5487 and x4367) and checking (BB&T x3162), apparently on an as-needed basis. He also made *de minimis* transfers to and from other accounts, such as Daughter-2's BB&T accounts. This pattern of frequent online funds transfers was evident in the BB&T records at all times relevant to this investigation.

61.     MOUZON also established a BB&T brokerage account which he funded with online transfers from BB&T x5487 (see pp 22-23 below).

## **MOUZON'S FINANCES**

62.     As described above (see Table 1), MOUZON deposited BB&T x2777 Check Number 1146 in the amount of $1,739.16 to his personal checking account (BB&T x3162) on August 25, 2017. The combined balance in MOUZON's personal deposit accounts (BB&T x3162 and BB&T x5487) as of August 25, 2017, after deposit of Check Number 1146, was $6,111.97.

63.     Review of BB&T records reveals two sources of legitimate monthly income: MOUZON's pay from VICTIM COMPANY, and monthly deposits of $1,025 (the source of which has not been determined) that ended in August 2019.

64.     MOUZON's regular net bi-weekly pay from August 2017 through the beginning of the COVID-19 pandemic in March 2020 ranged from approximately $3,250 to $3,680.[4] VICTIM COMPANY officials stated pay cuts were applied after COVID shutdowns began. From March 2020 to MOUZON's separation from employment in August 2021, his regular net bi-weekly pay ranged from approximately $2,550 to $2,975.

---

[4] There are two exceptions. In late October 2019, MOUZON appears not to have received his regular bi-weekly paycheck. On another occasion in early February 2020, MOUZON received a paycheck of $8,660.51.

20

Based on direct deposits reflected in BB&T records, the total amount of MOUZON's legitimate net pay (after taxes and other deductions) from VICTIM COMPANY from August 2017 through August 2021 totaled $350,010.88.

65.    Review of BB&T records and various government and law enforcement databases revealed no business activity, employment, or other sources of income from 2017 to present for Kimberly Mouzon.

66.    Between August 2017 and February 8, 2021, the last date MOUZON purchased any property identified in paragraph 2 of this Affidavit, there were only two material, non-recurring deposits to his BB&T accounts from legitimate sources (and not related to property acquired with VICTIM COMPANY funds). On January 18, 2018, MOUZON made an $11,000 counter deposit from an undetermined source, which was promptly applied to the balance on BB&T credit card x4636. On September 29, 2020, MOUZON deposited $276,383.62 from the sale of real property. Within 45 days of this deposit MOUZON spent an amount approximating the sale proceeds on other real property, and on a boat which is not included in this Application.

67.    BB&T records for the MOUZON's various deposit, loan and credit card accounts for the period from August 2017 to the present show that, in most months expenditures for mortgage and other loan payments, credit card payments, and other expenses exceeded legitimate income even before the substantial expenditures described in the following sections.

68.    Based on this investigation, MOUZON did not have sufficient legitimate income from which he could have made the investments and personal property purchases

21

described in this Affidavit.

## SEIZURE WARRANTS REQUESTED: FINANCIAL ACCOUNTS

*Brokerage Account, Truist Investment Services, Inc. Account WA8-071813*

| | | |
|---|---|---|
| 3/19/2020 | $ | 29,326.05 |
| 3/20/2020 | $ | 11,099.35 |
| 3/23/2020 | $ | 10,745.90 |
| 3/31/2020 | $ | 4,935.65 |
| 4/8/2020 | $ | 5,679.63 |
| 4/20/2020 | $ | 31,546.15 |
| 4/21/2020 | $ | 20,057.40 |
| 9/2/2020 | $ | 16,371.20 |
| 9/3/2020 | $ | 16,321.29 |
| 9/21/2020 | $ | 13,637.45 |
| 10/13/2020 | $ | 6,986.49 |
| TOTAL | $ | 166,706.56 |

Each of these deposits came directly from MOUZON's BB&T savings account, BB&T
x5487.

70.     As a result of the merger of BB&T and SunTrust, all assets in BB&T
Investments account number 43940016 were transferred to account number WA8-071813
at Truist Investment Services, Inc. in February 2021.

71.     Review of monthly statements for MOUZON's brokerage account for the
period from March 2020 to December 31, 2021, reveals that the only credits to the
brokerage account are the transfers from BB&T x5487, dividends, and proceeds from stock

22

transactions. There are no withdrawals from the account. The value of the brokerage account portfolio as of December 31, 2021, was $300,297.13.

*Davenport & Company LLC Accounts*

### Account Number DA1-018245 (Kimberly S Mouzon IRA)

72. Records provided by Davenport & Company, LLC, a financial institution providing investment services, show Kimberly S. Mouzon has an IRA, Account Number DA1-018245. The assets in this account were previously held under Account Number 1197-5241.

73. On February 3, 2021, MOUZON wrote check number 1282 in the amount of $7,000 on BB&T x3162 to "Davenport + Company." The memo line reads that the check is for "Kim IRA #1197-5241." There have been no withdrawals from this account since the deposit.

74. Davenport & Company records confirm that $7,000 was deposited to Account Number DA1-018245 (f/k/a Account Number 1197-5241) on February 10, 2019, by "A. Mouzon."

### Account Number DA1-107899 (UTMA Brokerage Account)

75. Records of Davenport & Company, LLC, show that MOUZON opened an account named "S Allen Mouzon C/F [Minor] Mouzon U/NC UTMA" on or about October 8, 2019. This is a custodial account under the Uniform Transfers to Minors Act (UTMTA) for the benefit of MOUZON's grandchild. Originally identified as Account Number 2168-6098, the UTMA account is now designated Account Number DA1-107899.

76. Davenport & Company records confirm there have been four Funds Deposits

23

to Account Number DA1-107899 (f/k/a Account Number 2168-6098) from the account opening through December 31, 2021, as follows:

| | | |
|---|---|---|
| 10/10/19 | $ | 1,000 |
| 12/18/19 | $ | 500 |
| 7/28/20 | $ | 1,000 |
| 1/15/21 | $ | 7,500 |
| Total | | $10,000 |

Davenport records show each of these Funds Deposits was made by "MOUZON," "S Mouzon," or "A Mouzon." There have been no withdrawals from the account.

77. On October 19, 2019, check number 1190 in the amount of $1,000 cleared BB&T x3162. An image of this check was not available for review.

78. On December 18, 2019, check number 1197 in the amount of $500 cleared BB&T x3162. An image of this check was not available for review.

79. On July 22, 2020, MOUZON wrote check number 1235 in the amount of $1,000 on BB&T x3162 to "Davenport + Company." The memo line reads that the check is for "[Minor] #2168-6098."

80. On January 1, 2021, MOUZON wrote check number 1274 in the amount of $7,500 on BB&T x3162 to "Davenport + Company." The memo line reads that the check is for "#2168-6098."

*Deposit Accounts BB&T x3162 and BB&T x5487*

81. Title 18, United States Code, Section 984 addresses civil forfeiture of fungible property. I am advised that Section 984 allows the United States to seize for civil forfeiture identical property found in the same place where the property had been kept. I am advised that under Section 984(a)(1) this Affidavit need not demonstrate that the

24

monies now in an account are the particular monies involved in the offense, so long as the forfeiture is sought for other funds on deposit in that same account.

82.     I am further advised that the "fungibility" rule of Section 984(b) cannot reach back in time for an unlimited period. Section 984(b) provides:

> No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than one year from the date of the offense.

83.     I am advised that, while Section 984 does not explicitly term "action," the section's legislative history clearly establishes that Congress intended the seizure of property to constitute the "action" to be commenced within one year of the offense in order to obtain the benefit of the application of that section's fungibility rule:

> Section 984 provides that in cases involving fungible property, property is subject to forfeiture if it is identical to otherwise forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint, regardless of whether or not the fungible property was continuously present or available between the time it became forfeitable and the time it was seized.

Money Laundering Enforcement Amendments of 1991, H.R. Rep. No. 102-28 (March 20, 1991).

84.     Accordingly, I am only requesting seizure warrants for the BB&T deposit accounts in the name of MOUZON and his wife for funds involved in the offense that were deposited there within the last 12 months, specifically: (a) funds on deposit up to and including the amount of $20,000 from BB&T x3162, and (b) funds on deposit up to and including the amount of $61,489 from BB&T x5487.

25

85.  According to records obtained during the investigation, on February 3, 2020, VICTIM COMPANY purchased a 2019 Dodge Journey, VIN 3C4PDCBG3KT871124, from North Point Chrysler Dodge in Winston-Salem, North Carolina for $24,833.22. MOUZON signed the bill of sale on behalf of the VICTIM COMPANY. The Title and Title Application list VICTIM COMPANY as the owner. Again, MOUZON signed the Title Application on behalf of VICTIM COMPANY.

86.  The purchase of the 2019 Dodge Journey, VIN 3C4PDCBG3KT871124, was financed in full through Chrysler Capital. A statement from Chrysler Capital dated February 18, 2020, reflects that the original principal balance due was $24,833.22. Between March 2020 and October 2020, eight equal monthly payments in the amount of $503.41 were made on the loan from Pinnacle x0400. Then, on October 20, 2020, a payment of $22,214.18 – representing the remaining balance on the loan – was paid from Pinnacle x0400.

87.  On November 20, 2020 MOUZON e-mailed Son-1[5] information concerning the specifications of the 2019 Dodge Journey, VIN 3C4PDCBG3KT871124. That e-mail is reproduced below as Image 1:

---

[5] Upon information and belief, Son-1 is MOUZON's child.

26

**Image 1**

| | |
|---|---|
| **From:** | Allen Mouzon |
| **Sent:** | Friday, November 20, 2020 12:02 PM |
| **To:** | ████████████████████ |
| **Subject:** | Vehicle specs |
| **Attachments:** | 20201120120300175.pdf |

Here is the spec sheet on the vehicle. We paid $24800 for the car. I have the title in my hand. I cant remember the mileage but I will look tonight.

88.     Additional records obtained from the North Carolina Division of Motor Vehicles ( "NC DMV") show that on December 8, 2020, the reverse side of VICTIM COMPANY's title was re-assigned to buyer MOUZON. The re-assignment was signed by "[VICTIM COMPANY] by Allen Mouzon CFO." MOUZON did not submit a Title Application to NC DMV transferring title to the 2019 Dodge Journey, VIN 3C4PDCBG3KT871124, from VICTIM COMPANY to himself until September 2021.

89.     This investigation has not revealed any payment from MOUZON to VICTIM COMPANY for the 2019 Dodge Journey, VIN 3C4PDCBG3KT871124.

90.     On September 24, 2021, MOUZON sold the 2019 Dodge Journey, VIN 3C4PDCBG3KT871124, through Hiester Automotive in Fayetteville, North Carolina. Hiester Automotive issued MOUZON a check for $20,000 for the 2019 Dodge Journey – check number 300217 drawn on First Bank in Virginia.

91.     On September 24, 2021, the above-referenced check was deposited in full in BB&T x3162.

92.     Accordingly, I am only requesting a seizure warrant to seize up to $20,000 of funds on deposit from BB&T x3162.

27

*BB&T x5487*

93.     As explained in the section titled "VICTIM COMPANY Funds Applied to MOUZON's Line of Credit," MOUZON took advances totaling over $1.4 million on his BB&T line of credit and repaid those advances using VICTIM COMPANY's funds from BB&T x2777. MOUZON deposited the line of credit advances in either his personal checking or savings account–BB&T x3162 or BB&T x5487–as reflected in the table on p.19, *supra*.

94.     Also as reflected in the table, advances totaling $61,489 (i.e, $50,000 on February 12, 2021; $7,977.13 on February 17, 2021; and $3,511.87 on February 17, 2021) were deposited into BB&T x3162 within one year from the date of offense. Accordingly, funds on deposits up to a total of $61,489 in BB&X x3162 are subject to forfeiture under Title 18, United States Code, Section 984.

## MOUZON REAL PROPERTY TRANSACTIONS

### 1713 Waterford Pointe Road, Lexington

95.     By a deed dated July 11, 2020, and recorded July 17, 2020, in the Davidson County deed records, MOUZON and his wife purchased property known as 1713 Waterford Pointe Road, Lexington, North Carolina. Based on the transfer tax paid, the purchase price was approximately $616,000. County real property records do not show any liens recorded at the time of the purchase; however, a Deed of Trust securing an Equity Line of Credit was recorded against the property 10 months later, on May 27, 2021.

96.     On July 17, 2020, funds in the amount of $611,847.89 were sent via wire transfer from BB&T x5487 to an account for Beneficiary Nance & Overbey, PLLC Real

28

Estate. The Originator to Beneficiary Info reads: "CLOSING COST FOR SAMUEL AND KIMBERLY MOUZON."

97. On information and belief, the property known as 1713 Waterford Pointe Road is the primary residence of MOUZON and his wife.

<u>2100 Waterford Pointe Road, Lexington</u>

98. By a deed dated October 30, 2020, and recorded November 2, 2020, in the Davidson County deed records, MOUZON and his wife purchased property known as 2100 Waterford Pointe Road, Lexington, Davidson County, North Carolina. Based on the transfer tax paid, the purchase price was approximately $200,000. County real property records do not show any Deeds of Trust recorded against this property.

99. In an Offer to Purchase and Contract signed on October 3, 2020, MOUZON and his wife agreed to pay $200,000 for the property known as 2100 Waterford Pointe Road. As provided in the Contract, MOUZON made a $1,500 earnest money deposit and a $1,000 due diligence payment on October 4, 2020, using check numbers 1250 and 1251 from BB&T x3162.

100. On October 29, 2020, funds in the amount of $198,611.83 were sent via wire transfer from BB&T x5487 to an account for Beneficiary Nance & Overbey, PLLC Real Estate. The Originator to Beneficiary Info reads: "2100 WATERFORD POINTE RD CLOSING."

101. On information and belief, the property known as 2100 Waterford Pointe

29

Road is the primary residence of Daughter-1.[6]

*Improvements to 1713 and 2100 Waterford Pointe Road.*

102.    MOUZON spent more than $125,000 on improvements to 1713 and 2100 Waterford Pointe Road between purchase and March 3, 2021, including more than $100,000 on a boat dock and lifts at 1713 Waterford Pointe Road.

### 2084 Waterford Pointe Road and 2092 Waterford Pointe Road. Lexington

103.    By a deed dated December 7, 2020, and recorded December 16, 2020, in the Davidson County deed records, MOUZON and his wife purchased two lots known as 2084 Waterford Pointe Road and 2092 Waterford Pointe Road, Lexington, Davidson County, North Carolina. Based on the transfer tax paid, the total purchase price for the two lots was approximately $48,000. County real property records do not show any Deeds of Trust recorded against this property.

104.    On December 16, 2020, funds in the amount of $48,751.91 were sent via wire transfer from BB&T x5487 to an account for Beneficiary Nance & Overbey, PLLC Real Estate. The Originator to Beneficiary Info reads: "SAMUEL ALLEN MOUZON."

### 6253 Catalina Drive. Unit 921. Willow Bend and Barefoot Resort. N. Myrtle Beach

105.    By a deed dated March 16, 2021, and recorded March 19, 2021, in the Horry County deed records, MOUZON and his wife purchased property known as 6253 Catalina Drive, Unit 921, Willow Bend and Barefoot Resort, North Myrtle Beach, County of Horry, South Carolina. The reported purchase price of the property was $159,900.  County real

---

[6] Upon information and belief, Daughter-1 is MOUZON's child.

30

property records do not show any Deeds of Trust recorded against this property.

106. On March 17, 2021, funds in the amount of $160,877.05 were sent via wire transfer from BB&T x5487 to an account for Beneficiary Ashe Law Firm, Inc. Trust Account. The Originator to Beneficiary Info reads: "6253 CATALINA DR UNIT 921 NORTH MYRTLE BEACH SC 29582."

1 Fern Court, Ocean Isle Beach

107. Brunswick County deed records show that MOUZON and his wife purchased property known as 1 Fern Court, Ocean Isle Beach, County of Brunswick, North Carolina, on or about July 3, 2003. Based on the transfer tax paid, the purchase price was approximately $250,000. County real property records show that at the time of purchase, the property secured a mortgage in the amount of $150,000 payable to Bank of North Carolina. The debt to Bank of North Carolina was satisfied on September 25, 2018, by JP Morgan Chase, successor-in-interest.

108. The property at 1 Fern Court also secured an Equity Line of Credit from BB&T in the amount of $125,000, dated October 3, 2006 (BB&T x6001). As described above (see *VICTIM COMPANY Funds Applied to MOUZON's Line of Credit, supra* p. 16), BB&T x6001 played a prominent role in the offenses described in this Affidavit, as between December 2, 2019, and February 17, 2021, MOUZON used $1,411,606.12 of VICTIM COMPANY funds to make payments to this account.

**SEIZURE WARRANTS REQUESTED FOR PERSONAL PROPERTY**

2020 Jeep Wrangler, VIN 1C4HJXDG3LW171312

109. According to NC DMV records, MOUZON purchased a 2020 Jeep

31

Wrangler, VIN 1C4HJXDG3LW171312, from Asheboro Chrysler Dodge on January 1, 2020. There was no trade-in and no deposit. After taxes and other fees, adjustments, and rebates, the net cash price was $41,920.15.

110. The net cash price was paid from BB&T x3162 with check number 1200 in the amount of $41,920.15 dated January 1, 2020. The check was hand-written and signed by MOUZON.

2020 Jeep Wrangler, VIN 1C4HJXENXLW166427

111. According to NC DMV records, Daughter-2 purchased a 2020 Jeep Wrangler, VIN 1C4HJXENXLW166427, from North Point Jeep of Winston-Salem on January 25, 2020. There was no trade-in and no deposit. After taxes and other fees, adjustments, and rebates, the total price was $49,867.

112. The total price was paid from BB&T x3162 with check number 1203 in the amount of $49,867 dated January 25, 2020. The check was hand-written and signed by MOUZON.

2020 GMC Yukon Denali, VIN 1GKS2HKJ2LR148503

113. According to NC DMV records, MOUZON and Kimberly Sowers Mouzon purchased a 2020 GMC Yukon Denali, VIN 1GKS2HKJ2LR148503, from Vestal Buick GMC of Kernersville on November 7, 2019. There was no trade in and no deposit. After taxes and other fees, adjustments, and rebates, the Balance Due was $77,000. The Balance Due was financed through Wells Fargo Auto.

114. Wells Fargo Auto was paid with four checks from BB&T x2777 in the name of VICTIM COMPANY, as follows:

32

| Date | Check # | Amount |
|------|---------|--------|
| 12/12/2019 | Ck 1221 | $16,501.86 |
| 1/4/2020 | Ck 1233 | 21,831.89 |
| 2/11/2020 | Ck 1244 | 23,667.01 |
| 3/9/2020 | Ck 1270 | 20,764.53 |
| TOTAL | | $82,765.29 |

All four checks were hand-written and signed by MOUZON.

### 2019 Toyota Camry, VIN 4T1B61HK8KU758954 -- Traded for 2021 Jeep Grand Cherokee, VIN 1C4RJFAG6MC839058

115.     According to NC DMV records, Daugher-2 and MOUZON purchased a 2019 Toyota Camry, VIN 4T1B61HK8KU758954, from Modern Toyota of Winston-Salem on March 30, 2019, for a Total Price of $26,976. MOUZON traded-in a 2010 Jeep Grand Cherokee, VIN 1J4PR4GK2AC154030, and was credited $7,000 toward the Camry purchase. There was no deposit. After taxes and other fees, adjustments, and rebates, the Balance Due was $24,246.95, which was financed through World Omni Financial Corp.

116.     Upon information and belief, Daughter-2 was a college student in 2019.

117.     From May 2019 through October 2019, six successive monthly payments in the amount of $394.62 (a total of $2,367.72) were made to "AUTO LOAN WOFCSET 2354 [Daughter-2]" by online debits from a BB&T Student Banking account ending in 1560 in the names of Daughter-2 and MOUZON. Bank statements for BB&T x1560 for the 6 months during which loan payments were made from the account show that $3,965 (more than 63 percent of the money deposited to the account during that period) came directly from MOUZON.

118.     The balance due on the 2019 Camry was paid with check number 1218 in the

33

amount of $22,684.49 from BB&T x2777 dated November 12, 2019. The memo line indicates the check is for "Acct #001010000004082354." It was hand-written and signed by MOUZON.

119.    According to records from Ilderton Dodge in High Point, NC, the 2019 Camry was traded-in on the purchase of a 2021 Jeep Grand Cherokee, VIN 1C4RJFAG6MC839058, on November 23, 2021 by Daughter-2 and Son-in-Law-1. A $29,000 credit was granted for the trade-in and $5,000 was paid toward the purchase with a Cashier's Check from Pinnacle Bank, Remitter [Son-in-Law-1]. After taxes and other fees, adjustments, and rebates, the Balance Due on Delivery was $14,030.32, which was financed through Chrysler.

120.    Upon information and belief, Daughter-2 married Son-in-Law-1 on or about December 4, 2021.

2017 Bombardier SeaDoo Spark, Hull ID YDV62321J617;
2017 Bombardier SeaDoo Spark, Hull ID YDV62256J617; and
2017 Triton LTWCII trailer, VIN 4TCSM1120HHL40381

121.    According to NC DMV records, MOUZON purchased a 2017 Bombardier SeaDoo Spark, Hull ID YDV62321J617, a 2017 Bombardier SeaDoo Spark, Hull ID YDV62256J617, and a 2017 Triton LTWCII trailer, VIN 4TCSM1120HHL40381, from Honda of Winston-Salem on March 7, 2017 – less than one month after Individual-1's death. After taxes and other fees, adjustments, and rebates, the Total Price for the SeaDoos and trailer was $18,977.84. A down payment of $250 was applied and the balance was financed through Sheffield Financial.

122.    Monthly payments to Sheffield in the amount of $250.92 (except for one

34

payment of $101.84) were made through September 2019 by online debits to BB&T account x3162.

123.    The balance owed to Sheffield Financial was paid in full with check number 1204 in the amount of $13,943.01 from BB&T x2777 dated September 24, 2019. The check was hand-written and signed by MOUZON.

2006 Correct Craft Super Air Nautique, SN CTC69095H506, with motor; and
2006 Ramlin Trailer, VIN 4WAAKFS2961000165

124.    On information and belief, Daughter-in-Law-1 married MOUZON's son, Son-1, on or about September 2, 2017.

125.    On or about March 16, 2016, Daughter-in-Law-1 entered into a loan agreement with Sharonview Federal Credit Union for the purchase of a 2006 Correct Craft Super Air Nautique, VIN CTC69095H506.

126.    According to NC DMV records, Daughter-in-Law-1 purchased a 2006 Correct Craft Super Air Nautique, VIN CTC69095H506, with motor, and a 2006 Ramlin Trailer, VIN 4WAAKFS2961000165, from a private individual on August 17, 2016. NC DMV records do not reflect any lien against the title.

127.    On October 10, 2019, Sharonview FCU received check number 1209 in the amount of $17,125.74 from BB&T x2777, dated October 7, 2019, in payment of the balance due on Daughter-in-Law-1's debt. The check is hand-written and signed by MOUZON.

128.    According to NC DMV records, on or about November 7, 2019, Daughter-in-Law-1 transferred a 2006 PLSR BT, VIN 4WAAKFS2961000165, to MOUZON.

35

129.     Several photos of a vessel matching on-line images of a 2006 Correct Craft Super Air Nautique model boat were recovered from a cellphone issued to MOUZON by VICTIM COMPANY and recovered by VICTIM COMPANY when MOUZON was separated from employment. In one photo, the boat is located on a double-axle trailer. In another photo, MOUZON appears to be the driving the boat on a lake, with no passengers aboard. In two of the photos, the boat is located next to a pontoon boat at a dock which has been identified by observation as located at MOUZON's residence at 1713 Waterford Pointe Road, Lexington, NC.

2014 Sea Hunt Ultra 235SE, SN SXSA0017A414, with motor;
2014 WESCO Boat Trailer, VIN: 1W7B12429E1001495

130.     According to NC DMV records, MOUZON purchased a 2014 Sea Hunt Ultra 235SE, SN SXSA0017A414, with motor, and a 2014 WESCO Boat Trailer, VIN 1W7B12429E1001495, from Chatlee Boat & Marine in Sanford, NC, on April 4, 2014, for a combined price of $62,583. After taxes and other fees, adjustments, and rebates, and application of a $5,000 deposit, the Balance Due per the Sales Contract was $58,018. A hand-written note indicates $4,500 was paid with Check #9476, leaving a balance of $53,518. This balance was financed through BB&T.

131.     Recurring monthly payments to BB&T Retail Loan #2022806257-1001 in the amount of $450.89 were made through October 2019 by online debits to BB&T x3162. BB&T records reflect that this loan financed the Sea Hunt purchase.

132.     On or about November 5, 2019, check number 1216 in the amount of $41,478.59 was written from BB&T x2777 in the name of VICTIM COMPANY. The

36

memo line on the check reads "Payoff #2022806257-1001". The check is hand-written and signed by MOUZON.

133. A photo recovered from a cellphone issued to MOUZON by VICTIM COMPANY and recovered by VICTIM COMPANY when MOUZON was separated from employment show this boat on a trailer. Other photos show MOUZON and various family members aboard what appears to be this same vessel at locations off and near the coast.

2021 Polaris Model G21GXD99AZ, VIN 3NSGXD998MH220337

134. According to sales records of Crossroads Yamaha in Albemarle, MOUZON purchased a 2021 Polaris Model G21GXD99AZ, VIN 3NSGXD998MH220337, on February 8, 2021, for a Selling Price of $21,748.98. There was no trade in and no deposit. After taxes and other fees, the Unpaid Balance was $25,145.

135. The balance due was paid with check number 1285 from BB&T x3162 in the amount of $25,145 dated February 8, 2021. The check is hand-written and signed by MOUZON.

136. A photo of a Polaris matching on-line images of a 2021 Polaris Model G21GXD99AZ were recovered from a cellphone issued to MOUZON by VICTIM COMPANY and recovered by VICTIM COMPANY when MOUZON was separated from employment. In the photo, the Polaris appears in a garage near a motorcycle bearing a NC tag issued to Son-1. The appearance of the garage is consistent with photos and observation of the attached garage at Son-1's residence in Fuquay-Varina, NC.

2020 or 2021 Club Car golf cart, VIN 4C94124DXMA335408

137. According to NC DMV records, MOUZON purchased a 4-passeneger

37

electric cart from Cary Cart Company of Ocean Isle Beach on November 6, 2020, for a Price of $12,615. This vehicle is variously described in NC DMV records and the dealer paperwork as a 2020 or 2021 model, and as a "Cary Cart" or "Club Car Onward." Despite variations in the description, it is consistently assigned VIN 4C94124DXMA335408.

138. The purchase price was paid with check number 1265 from BB&T x3162 in the amount of $12,615 dated November 6, 2020. The check is hand-written and signed by MOUZON.

<u>2021 Evolution 6 Plus LSV, VIN 7MZL20827MC000413</u>

139. According to NC DMV records, MOUZON purchased a 2021 Evolution 6 Plus LSV, VIN 7MZL20827MC000413, from Great Day Golf Carts LLC of Ocean Isle Beach at a total cost of $12,150.

140. The Invoice for the sale is dated October 17, 2020, and stamped "PAID 11/25/2020."

141. On October 17, 2020, a $250 charge to Great Day Golf Carts LLC was made on MOUZON's BB&T credit card x4636, leaving a balance of $11,900. The balance of the purchase price was paid with check number 1261 from BB&T x3162 in the amount of $11,900 dated November 25, 2020. The check is hand-written and signed by MOUZON.

<u>2019 Quality Trailer, VIN 5W0FB1213KL0001454</u>

142. According to NC DMV records, MOUZON purchased a 2019 Quality Trailer, VIN 5W0FB1213KL0001454, on September 3, 2019, from nctrailers.com in Thomasville, NC. After taxes and other fees, the Total Cash Price was $2,493.58, which the Bill of Sale indicates was paid with a VISA charge card.

38

143. Records for MOUZON's BB&T credit card x4636 show a charge to NC TRAILER SALES in the amount of $2,493.58 on September 3, 2019. BB&T credit card x4636 including this charge was paid in full with one or more checks from BB&T x2777, as shown in Table 2 above.

## VEHICLES PURCHASED WITH PROCEEDS, NOT AVAILABLE TO BE SEIZED
### 2015 Volkswagen Beetle, VIN 3VW507AT2FM800857

144. According to NC DMV records, MOUZON purchased a 2015 Volkswagen Beetle, VIN 3VW507AT2FM800857, from Ocean City Chevrolet in Shallotte, NC, on April 4, 2018. After taxes and other fees, adjustments, and rebates, the Total Cash Price was $20,167.82. This amount was financed through GM Financial.

145. From May 2018 to September 2019, monthly payments in the amount of $326.11 were made to GM Financial by online debits from BB&T x3162.

146. The balance due on the 2015 Volkswagen Beetle was paid with check number 1205 in the amount of $16,018.57 from BB&T x2777 dated September 24, 2019. The check was hand-written and signed by MOUZON.

147. The 2015 Volkswagen Beetle, VIN 3VW507AT2FM800857, was sold and a check in the amount of $15,500 representing proceeds from the sale was deposited to BB&T x3162 on August 28, 2020.

### 2020 Club Cart, VIN 4C96124DXLA335110

148. According to NC DMV records, MOUZON purchased a 2020 Cary Cart, VIN 4C96124DXLA335110, from Cary Cart Company of Ocean Isle Beach on April 6, 2020, for a Price of $11,000.

39

149. The purchase price was paid with check number 1216 from BB&T x3162 in the amount of $11,000 dated April 6, 2020. The check is hand-written and signed by MOUZON.

150. According to NC DMV records title to this vehicle was surrendered to Cincinnati Insurance on September 15, 2020.

151. On September 24, 2020, BB&T x3162 received an electronic credit in the amount of $18,771.75. The memo line for the credit reads: "Claim Pmt The Cincinnati I."

AUTHORITY TO ISSUE WARRANTS FOR PROPERTY OUTSIDE THIS DISTRICT

152. I expect that some or all of the property subject to seizure may be found outside the Middle District of North Carolina. Section 981(b)(3) of Title 18, United States Code, explicitly provides jurisdiction for the issuance of seizure warrants for property located in other districts. This statute provides as follows:

> Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found.

153. Issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which ... the acts or omissions giving rise to the forfeiture occurred." Title 28, United States Code, Section 1355(b)(1)(A). As provided in Title 18, United States Code, Section 981(b)(3), the warrant may be "executed in any district in which the property is found."

## CONCLUSION

154. Based on the investigation described above, I submit there is probable cause

40

to believe that monies and properties described in paragraph 2 and Attachment B constitute

or are derived from proceeds traceable to specified unlawful activity, specifically Title 18,

United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), or 641 (theft of

government funds), or were involved in transactions or attempted transactions in violation

of Title 18, United States Code, Section 1957, and are therefore subject to seizure and

forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and/or (C).

155.    Based on the investigation described above, I also submit there is probable

cause to believe that one or more of the pieces of personal property described in paragraph

2 and Attachment B may be located at MOUZON's residence at 1713 Waterford Pointe

Road, Lexington, North Carolina, as more fully described in Attachment A.

This the 26th day of January, 2022.

/s James E. Newsome
James E. Newsome
Senior Special Agent
United States Secret Service

On this day, the applicant appeared before me by reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1. This the 26th day of January, 2022, at 3:12 pm.

Hon. Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina

Case 1:22-mj-00035-JLW   Document 1   Filed 01/26/22   Page 42 of 45

## ATTACHMENT A

*Property to be searched*

The property to be searched is 1713 Waterford Pointe Road in Lexington, North Carolina (the "**SUBJECT PROPERTY**"), further described as single-family residence. The property is a two-story brick home sitting on the waterfront at High Rock Lake. The house is constructed of grey/brown in colored bricks, with brown shutters, and dark in color shingles. The house has a wooden deck/screened in porch which wraps half way around the right side of the house and continues across the backside of the home. There is a separate two car garage, which is beige in color with cedar shack trim. There is a separate entrance door as well as a "sliding/loading door" on the back side of the garage that faces the lake with a paved driveway running from the garage to the lake (dock area). There is also a separate beige in color outbuilding on the left side of the house in the back yard with a small wooden porch, a white door, and dark in colored shingles. A photograph of the **SUBJECT PROPERTY** is below:

**ATTACHMENT B**

*Property to be seized*

This warrant authorizes the seizure of any of the following property located on the SUBJECT PROPERTY:

Financial accounts:

    a.    All securities, funds on deposit, and other items of value held in the name of Samuel Allen Mouzon in Truist Investment Services, Inc. brokerage account number WA8-071813;

    b.    All funds on deposit up to a total of $20,000 in Truist (formerly BB&T) account number 1340004063162 in the names of Samuel Allen Mouzon and Kimberly Sowers Mouzon;

    c.    All funds on deposit up to a total of $61,489 in Truist (formerly BB&T) account number 4340001145487 in the names of Samuel Allen Mouzon and Kimberly Sowers Mouzon;

    d.    Securities, funds on deposit, and other items of value, up to a total of $7,000, held at Davenport & Company LLC in IRA Account number DA1-018245 in the name of Kimberly S Mouzon; and

    e.    All securities, funds on deposit, and other items of value held at Davenport & Company LLC in brokerage account number DA1-107899 in the name of S Allen Mouzon C/F [minor] Mouzon U/NC UTMA.

Personal property:

    f.    2020 Jeep Wrangler Unlimited, VIN 1C4HJXDG3LW171312;

    g.    2020 Jeep Wrangler, VIN 1C4HJXENXLW166427;

    h.    2020 GMC Yukon XL Denali, VIN 1GKS2HKJ2LR148503;

    i.    2021 Jeep Grand Cherokee, VIN 1C4RJFAG6MC839058;

    j.    2017 Bombardier SeaDoo Spark, Hull ID: YDV62321J617;

    k.    2017 Bombardier SeaDoo Spark, Hull ID: YDV62256J617;

43

l.      2017 Triton LTWCII trailer, VIN 4TCSM1120HHL40381;

m.     2006 Correct Craft Super Air Nautique, SN CTC69095H506, with motor;

n.     2006 Ramlin Trailer, VIN 4WAAKFS2961000165;

o.     2014 Sea Hunt Ultra 235SE, SN SXSA0017A414, with motor;

p.     2014 WESCO Boat Trailer, VIN 1W7B12429E1001495;

q.     2021 Polaris Model G21GXD99AZ, VIN 3NSGXD998MH220337;

s.     2021 Evolution 6 Plus LSV, VIN 7MZL20827MC000413;

t.     2020 or 2021 Club Car golf cart, VIN 4C94124DXMA335408;

r.     2019 Qualified Utility Trailer, VIN 5W0FB1213KL001454.

44